FRUGÉ, Judge.
This is a suit brought by Elisha Clovis, plaintiff herein, against Hartford Accident and Indemnity Company, the liability insurer for St. Patrick’s Hospital in Lake Charles. Universal Underwriters Insurance Company intervened in the suit in order to claim credit for workmen’s compensation benefits paid to Elisha Clovis.
The basis of this suit is a claim by plaintiff that while he was a patient at St. Patrick’s Hospital he received burns which aggravated a pre-existing condition and injuries in such a manner that he is now totally disabled. Plaintiff alleges that the burns and disability resulted from the negligence of a nurse’s aide employed by St. Patrick’s Hospital.
On May 12, 1967, while in the employment of Bobby Gist Pontiac Company of Sulphur, Louisiana, plaintiff received an injury when a motor that he was working on fell and struck him on the left leg. Plaintiff was seen by his family physician, Dr. Steve Price, on May IS, 1967. Upon examination it was found that plaintiff was suffering from “bruises and contusions involving the left leg and some hemorrhage subcutaneously, posterior, in the leg, near *179 the calf or gastrocnemius muscle area”. There was swelling, contusions, and areas of hemorrhage beneath the skin. Dr. Price recommended conservative treatment consisting of bed rest, elevation of the leg, warm compresses and medicines for relief of pain and absorption of edema.
Dr. Price continued to treat plaintiff unr til June 1, 1967, at which time, because plaintiff’s condition had worsened, Dr. Price admitted plaintiff to St. Patrick’s Hospital. Dr. Price diagnosed plaintiff’s condition at that time as having “ * * * some degree of infection in the leg. It looked like cellulitis, and inflammatory reaction to the tissues with extreme pain, and some fever, some chills. I thought the possibility of a septicemia in view of his type of injury that he had”. In short, the diagnosis at that time was a soft tissue injury with a secondary cellulitis involving the left lower extremity. Also indicated was the fact that plaintiff suffered from a pre-existing vascular insufficiency in the lower extremities which rendered him more susceptible to injury than the average normal person.
The “cellulitis” referred to above was defined as an infection primarily of the layers of the skin, characterized by heat, discoloration, usually redness, swelling, edema, and fluid accumulation under the tissue, the condition being caused by some type of bacteria.
As part of the treatment for plaintiff’s condition, Dr. Price had advised that he be treated by the use of warm compresses. The purpose of these compresses, as testified to by Dr. Price, is to encourage blood supply, and thus, a better oxygen supply to the area where the tissues are contused.
On June 2, 1967, the day after his admittance, one of the hospital’s nurses’ aides, Mrs. Etrulia Bundick, had as her duties the application of the warm compresses to plaintiff. Sometime during the day, Mrs. Bundick came into plaintiff’s room and advised him that it was time for the compresses. She approached plaintiff with a pan of water from which plaintiff’s witnesses testified steam arose. Plaintiff told the nurse that the water she was going to use was too hot, but she replied that it had to be hot to do him some good. Mrs. Bundick first placed plaintiff’s leg on a Tri-Pad, an absorbent, layered, but waterproof material. Then she took “four by fours”, a form of cotton compress, and put them into the water. Next, Mrs. Bundick removed said compresses from the pan by the use of tweezers or clothes pins and approached plaintiff’s leg. At this time plaintiff again advised the nurse that it seemed to him that the water was too hot, but Mrs. Bundick disregarded plaintiff’s notice. She dripped some of the water upon plaintiff’s injured leg, allegedly to attempt to accustom the leg to the temperature of the water, after which she placed the hot compresses directly upon the leg, wrapping the leg up in the Tri-Pad and a towel. Plaintiff and his witnesses testified that plaintiff made an outcry, due to the pain, and tried to remove his leg from under the compress, but was prevented from doing so because of the nurses’ aide’s holding his leg down. Plaintiff testified that due to the extreme pain he then passed out. When plaintiff came to, the nurse was gone and his leg was hurting. A nurse came and gave him a shot and he did not see his leg again until four or five days later. He testified that when the doctor first came in to see him he told Dr. Price that his leg had gotten burned.
Mrs. Bundick’s testimony differed somewhat from that of plaintiff’s. She said that the water was not so hot that it could have burned plaintiff, and that although she did not use a thermometer to test the water, she did put her elbow in it to test it and that because she was unable to remove the gauze pads from the water by the use of the tweezers, she used her hands. For those reasons, she alleged that plaintiff could not have been burned due to the temperature of the water.
On the next visit by Dr. Price, sometime on the afternoon of June 2, he was sur *180 prised at the drastic change for the worse in the condition of plaintiff’s leg. In short, the doctor was surprised at the increase in large number of blisters or bulla and at the general aggravation of the injury.
Following the episode, plaintiff received treatment for the cellulitis, the infection, and as well, for burns. Surgery in the form of debridement including “debridement for burns” was performed, and finally, on June 29, 1967, plaintiff was released. Since that date plaintiff has been under the out-patient care of Dr. Price.
At the time of trial, plaintiff was undoubtedly disabled, with little hope of recovery so as to be able to competently compete in the labor market. His disability, according to the medical experts, is mainly due to the scar tissue, the re-.suiting pain, and the inability to completely extend one foot. His condition was described by Dr. You el C. Smith, a burn expert from Beaumont, as being “chronic lower leg syndrome”, where due to trauma or burns the lymphatic and venous system becomes disrupted and the scarring in the subcutaneous area is easily aggravated by any trauma. If anything happens to the leg, little ulcers develop and very often these ulcers will get bigger and bigger and the skin will not heal itself. In other words, the leg just will not take trauma.
In the way of future medical, it was the opinion of the medical experts that possibly through the use of plastic surgery and operations to lengthen plaintiff’s Achilles tendon, plaintiff might be helped. However, the future is by no means bright.
After trial on the merits, the trial court ruled in favor of defendant, rejecting plaintiff and intervenor’s claims at their costs. The basis of the trial court’s ruling, according to its written reasons for judgment, was two-fold. First of all, the court felt that plaintifff had failed to prove by a preponderance of the evidence that he was burned with boiling or exceedingly hot compresses. Secondly, the court felt that, based entirely on the testimony, plaintiff’s condition could have come about even if the compresses were properly applied, therefore plaintiff had not sustained the burden of proving negligence on the part of defendant’s insured’s servant. The trial court did not deny the fact that plaintiff might have received burns, but simply felt that there was a lack of proof that such resulted from any negligence on the part of defendant’s insured’s servant.
As a basis for his appeal, plaintiff alleges that the trial court committed error in. not admitting that the plaintiff was in fact burned, and then in not finding that said burns must have resulted from the negligence of Mrs. Bundick. He alleges in his brief, and defendant as well argues in those terms, that the chief questions for decision are these:
(1) Was Elisha Clovis burned while in the hospital?
(2) If so, were these burns caused by the negligence in the application of the hot compresses?
(3) Was Elisha Clovis damaged as a result of the burn and to what extent?
(4) What is the amount of damages suffered by the plaintiff?
The position of defendants is that what plaintiff received, if anything, were not “burns” but were in fact “reasonably expected repercussions of proper application of prescribed warm wet compresses”. Their theory is that even though there might be second degree burn symptoms, such could be a result of normal treatment and of the progress of plaintiff’s injuries.
In order to logically dispose of the issues confronting us in this case we shall discuss each in answer to the questions posed by plaintiff’s brief.
(1) Was Elisha Clovis burned while in the hospital ?
In its judgment the trial court did not deny the possibility that plaintiff had been burned, but simply decided that there was *181 insufficient proof of negligence on the part of Mrs. Bundick in applying the compresses, and therefore, that the burden placed upon plaintiff to prove his case by a preponderance of the evidence had not been sustained.
After a thorough reading of the record this court cannot say that the trial court committed error in finding that there was a lack of sufficient proof of negligence on the part of defendant’s insured’s servant.
Of the evidence referring to a possible aggravation by burns, the plaintiff’s strongest case could be said to lie in the testimony of the attending physician, Dr. Price. According to the doctor’s testimony, it was his impression that plaintiff could have received second degree burns. He stated in response to counsel’s questions:
“Q. Now, doctor, did you come to the conclusion that while he was in the hospital he had received second-degree burns of the left lower extremity?
“A. Well that was my impression— that there was burns; yes, sir.
“Q. Now what brought you to that conclusion ?
“A. Well the dramatic change from one day to the next. There — Where the bulla seemed to be increased to such a large number and there was the — his history and the fact that the tissues looked — looked like it wasn’t improving and was aggravated in some way.
“Q. Had it obviously been aggravated by something. Is that correct, Doctor ?
“A. Yes, sir.”
Further, the doctor testified:
“Q. But it was and is your opinion that in the hospital at the time Elisha Clovis received second-degree burns. That was your diagnosis. Has anything happened to change your mind?
“A. No, sir., that was my impression.
“Q. And is that still your impression?
“A. Yes, Sir.
“Q. And all factors considered that’s your opinion today, is it not, sir?
“A. Yes.”
Throughout his testimony, Dr. Price made several statements akin to those cited above, which, when read alone seem to indicate that it was the doctor’s impression that unquestionably the defendant had received the burns alleged by plaintiff. However, when one considers the qualifications to that opinion drawn out by the questioning of the defendants and the court, there is developed great doubt that what the doctor referred to as “burns” were what we as laymen consider to be burns. In fact, a summary of the doctor’s testimony would be that what plaintiff received had the symptoms of second degree burns, but could as easily have been the result of the proper application of prescribed warm compresses causing a reaction in the already injured and infected tissue. This can best be illustrated by quoting the testimony wherein the doctor in effect said just that:
“Q. Doctor, of course there’s, a great deal being made of the use of words second-degree burns and as I understand the way you explained to the Court, that is, second-degree burns on normal tissue is usually brought about by the application of extraordinarily hot matter, is that correct ?
“A. That’s correct.
“Q. And that symptoms of second-degree burns can be brought about to devitalize necrotic tissue, as was on Elisha Clovis’ leg at this time, simply by the application of warm water?
“A. Yes.
“Q. Now, would it be safe to say that your use of the words second-degree burns would be, in order to describe a condition, so that doctors would understand the condition as it was at that time, that is, symptoms similar to second-degree burns which could very well have been produced by the simple application of warm water?
*182 “A. My impression was that he had devitalized tissue to which warm compresses had been applied and he developed second-degree burns, yes.
“Q. And by expressing that opinion you were not saying that he had been scalded by any means, were you ?
“A. No, certainly not.”
Further,
“Q. And given the history, you say, or came to the conclusion that in all probability it had been aggravated by the burn. Is that correct ?
“A. Well it could have been aggravated. I won’t necessarily say by the burn, but by the application of warm compresses. Certainly that did — must have aggravated it.”
A summary of Dr. Price’s testimony we feel would be that the pre-existing cellu-litis, the injury, and the infection were aggravated by the use of warm compresses properly applied, and that this aggravation had symptoms similar to those of second degree burns.
Of the other testimony in the record favoring1 plaintiff’s case, there remains only that of plaintiff and his two witnesses who, although in different versions, claim that the water was definitely too hot, and that the nurse applied the compresses disregarding plaintiff’s warnings. Mrs. Bundick, on the other hand, testified that she was sure the water was not too hot because she herself had touched it with her elbow to test it and she had wrung out the compresses with her hands before applying them.
After a thorough review of the entire record, we find ourselves forced to agree with the determination of the issue as made by the trial judge. In considering any trial court judgments appealed from, we are bound' to rule for an affirmance of the judgment unless we find that the judgment reveals manifest error. See Huntsberry v. Millers Mutual Fire Insurance Company, 205 So.2d 617 (La.App. 3d Cir., 1967) and Lucius v. Stonewall Insurance Company, 215 So.2d 843 (La.App. 3d Cir, 1968).
In summary, after considering the evidence, especially the seemingly conflicting opinions of Dr. Price, we conclude as did the lower court, that what actually occurred was the result of the proper application of warm compresses, and that the record does not contain sufficient evidence of negligence on the part of the hospital or its servant so as to make its insurer liable to plaintiff for damages.
Having decided that the trial court properly determined the issues in this case, we obviously need not discuss the other questions posed by the plaintiff.
For the foregoing reasons, the judgment of the trial court rejecting the demands of plaintiff and intervenor at their cost, is affirmed. Costs to be paid by plaintiff-appellant and intervenors.
Affirmed.
On Application for Rehearing.
En Banc. Rehearings denied.